THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEERUT SINGH,

           Plaintiff,

    v.

UNITED STATES POSTAL SERVICE,

           Defendant.

CASE NO. C17-0233-JCC

ORDER GRANTING SUMMARY JUDGMENT

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 22). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

On February 14, 2017, Plaintiff Keerut Singh sued Defendant the United States Postal Service (USPS) asserting violations of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a), and the Privacy Act, 5 U.S.C. § 552a. (Dkt. No. 1 at 1-2.) Singh, a former USPS employee, alleges that he requested his own background investigation and personnel file, but that the USPS failed to provide the requested documents or to conduct a reasonable search for them. (*Id.* at 2, 6.)

The evidence, viewed in a light most favorable to Singh, shows the following:

When Singh began working at the USPS in late 2014, he signed a waiver stating: "I UNDERSTAND THAT THE U.S. POSTAL SERVICE IS EMPLOYING ME WITHOUT THE RESULTS OF THE PREVIOUS EMPLOYER, CRIMINAL CHECKS OR DRUG TEST RESULTS BEING RECEIVED. I UNDERSTAND THAT IF DEROGATORY INFORMATION IS RECEIVED, I MAY BE TERMINATED." (Dkt. No. 27-1 at 2.) He was also fingerprinted. (*See id.* at 4; Dkt. No. 27 at 8.)

During his tenure at the USPS, Singh felt that he was being investigated, perhaps for whistleblowing or for potential terrorist activity. (Dkt. No. 27 at 5.) Singh ultimately quit his job at the USPS, and his last day of work there was June 15, 2016. (Dkt. No. 27-1 at 16.) He left the USPS to work for the City of Bothell. (*Id.* at 18.) Singh was terminated from his Bothell position on July 28, 2016. (Dkt. No. 27 at 7.)

In late 2016, Singh submitted three FOIA requests, one to each of the USPS's three branches: the Inspector General (OIG), (Dkt. No. 26 at 2), the Postal Inspection Service, (Dkt. No. 25 at 2-3), and the Postal Service (Dkt. No. 24 at 2).

Singh's first request was to the OIG on October 18, 2016. (Dkt. No. 26 at 2.) He requested his background check records, application documents, safety records, driving records, employee performance evaluations, and any investigations of him conducted by the OIG. (Dkt. No. 26-1 at 2.) Regarding this request, the USPS submits a declaration from Robert Fullerton, Manager of the OIG's FOIA unit. (Dkt. No. 26.) According to Fullerton, the OIG searched its indices for responsive records and determined that Singh had been a USPS employee. (*Id.* at 2.) However, Fullerton explains, "Postal Service personnel and background investigation files are not under OIG control and [the OIG] cannot release them under FOIA." (*Id.*) Fullerton avers that no other responsive records were located. (*Id.*)

The OIG sent Singh a letter explaining these circumstances, providing addresses for the Postal Inspection Service and the Postal Service, and advising Singh that his FOIA request must be submitted directly to them. (Dkt. No. 26-1 at 2-3.) Singh appealed this response. (*See id.* at 5.)

The OIG confirmed that the requested records were not in its possession or control and told Singh to contact the Postal Service. (*Id.*)

On November 3, Singh submitted a FOIA request to the Postal Inspection Service seeking "all background records obtained before and during [his] employment." (Dkt. No. 25 at 2-3; Dkt. No. 25-1 at 2.) Regarding this request, the USPS submits a declaration from Kimberly Mungin, Information Disclosure Technician at the Postal Inspection Service. (Dkt. No. 25.) According to Mungin, Singh indicated that he was a former City Carrier Assistant 1 (CCA1) for the Postal Service. (Dkt. No. 25 at 1, 3.) Mungin states that the Postal Inspection Service "did not conduct background investigations on CCA1s at the time [Singh] was seeking employment with the Postal Service." (*Id.* at 3.) Nonetheless, the Postal Inspection Service conducted a search for responsive records using Singh's name and date of birth. (*Id.*) The relevant database contained information such as names, Social Security numbers, case numbers, addresses, reports, physical identifying characteristics, and employment and payroll information. (*Id.*) Mungin avers that the search "disclosed no record that [Singh] has ever been the subject of a background investigation conducted by" the Postal Inspection Service. (*Id.* at 4.)

On November 17, the Postal Inspection Service sent Singh a letter informing him that no responsive records were found. (Dkt. No. 25-1 at 4.) Singh appealed this response. (*Id.* at 7.) The USPS Federal Compliance Office affirmed the decision, concluding that the Postal Inspection Service "conducted an adequate search for [Singh's] background check records and correctly informed [him] that no responsive records exist." (*Id.* at 9.)

On December 3, Singh submitted a FOIA request to the Postal Service, requesting the same records he sought from the OIG. (*Compare* Dkt. No. 24-1 *with* Dkt. No. 26-1 at 2.) Regarding this request, the USPS submits a declaration from Janine Castorina, the Chief Privacy and Records Management Officer for the Postal Service. (Dkt. No. 24.) Castorina states that, after reviewing Singh's request, it was determined that the Seattle District was most likely to have responsive records. (*Id.* at 2-3.) The Seattle District Records Custodian searched Singh's

official personnel file, as well as the District's Human Resources (HR) Department and Labor Relations Office. (*Id.* at 3.) These searches produced 43 pages of responsive records, which the Seattle District sent to Singh on December 13, 2016. (*Id.*; Dkt. No. 24-1 at 5.) Castorina avers that "no records were intentionally withheld or deemed exempt from disclosure by the Seattle District." (Dkt. No. 24 at 3.)

Singh appealed the Seattle District's determination that all responsive records had been produced. (Dkt. No. 24-1 at 11.) The Federal Compliance Office reviewed his appeal. (Dkt. No. 24 at 4.) It determined that, although appropriate records were searched in the District's initial response, some documents may have been maintained by the local post office where Singh was employed. (*Id.*) The Federal Compliance Office remanded the request for a further search of the records maintained by the Mill Creek Post Office. (*Id.*) Three additional documents were identified as responsive to Singh's request and provided to him. (*Id.*; Dkt. No. 24-1 at 15.)

Because Singh continued to insist that additional documents existed, Castorina asked the USPS Headquarters HR Manager, Joseph Bruce, to conduct an additional investigation. (Dkt. No. 24 at 4.) Bruce had access to all USPS HR records and databases. (*Id.*) As part of his effort to locate any remaining documents, he searched databases containing: (1) employee and family information, such as names, Social Security numbers, employee identification numbers, and birth dates; (2) personnel information, such as warning letters, notices of removal, grievances, and appeals; (3) employment investigation information, such as criminal, employment, military, and driving records, drug screening, medical assessments, and Special Agency Check with Inquiries (SACI) records; (4) job performance records, such as postal assignments, individual performance evaluations, and employee recognition awards; (5) employee development and training information, including records related to work history, assessments, training, examinations, and evaluations; and (6) financial information, such as payroll, compensation, benefits, decisions related to monetary awards, injury compensation, and claims for personal property loss or damage. (*Id.* at 5-6.) Bruce did not find any additional records in his searches. (*Id.*)

In response, Singh filed the present lawsuit, asking the Court to order the USPS to provide all background check and personnel file records. (Dkt. No. 1 at 6.) The USPS now moves for summary judgment, arguing that it has fulfilled its obligations to Singh under FOIA and the Privacy Act. (Dkt. No. 22 at 2.)

## II. DISCUSSION

### A. Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. FOIA Claims

The key question in a FOIA action is whether the Government improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). "Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Shannahan v. I.R.S.*, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009) (internal quotations omitted). This is because "the facts are rarely in dispute, and courts generally need not resolve whether there is a genuine issue of material fact." *Id.*

Instead, the Court follows a two-step inquiry when considering a summary judgment motion in a FOIA case. *Id.* The Court first evaluates whether the Government conducted a search that is "reasonably calculated to uncover all relevant documents." *Zemansky v. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985) (internal quotations omitted). If the agency satisfies this burden, the Court then determines whether the undisclosed information falls within one of the nine FOIA exemptions. *Shannahan,* 637 F. Supp. at 912. Here, the Government does not maintain that any exemption applies. (*See* Dkt. No. 22 at 10.) Instead, it argues that it has produced all responsive documents. (*Id.*) Accordingly, the Court's analysis will focus only on the first step of this inquiry.

Based on the evidence produced, the Court concludes that the USPS conducted a search "reasonably calculated to uncover all relevant documents." *See Zemansky*, 767 F.2d at 571. The USPS's declarations detail a thorough and reasonable effort by each of its branches to search databases that were likely to produce the requested records, plus a much more in-depth general search by Bruce. This is sufficient to warrant summary judgment on Singh's FOIA claim. *See id.* at 573 ("[A]ffidavits describing agency search procedures are sufficient for purposes of summary judgment only if they are relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith."); *see also Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("The issue [on summary judgment] is not whether any further documents might conceivably exist, but rather whether the government's search for responsive documents was adequate.").

Singh's arguments to the contrary are unavailing. He first argues that he has presented evidence of bad faith on the USPS's behalf. (Dkt. No. 27 at 2.) For example, he notes that he did not receive "INV Form79A." (Dkt. No. 17-1 at 2.) However, the evidence he produced also shows the USPS's explanation for this: "We do not maintain those forms in our files and cannot provide to you a form that is not maintained." (*Id.* at 15.) Singh also points to a clerical error the USPS made, using the wrong case number in originally responding to his FOIA requests. (*See*

Dkt. No. 27 at 11.) The Court is not convinced that a scrivener's error of this kind signifies nefarious intent. Singh fails to show any bad faith on the part of the USPS.

Singh further insists that there are other records—specifically, a complete background check—that were not produced. (*See* Dkt. No. 27 at 8-9.) He reasons that the "background check records ***must*** exist," (*see id.* at 9) (emphasis in original), because, when he was hired, he signed a form stating that he could be terminated if the USPS received "derogatory information" from a past employer, criminal check, or drug test. (*See* Dkt. No. 27-1 at 2.). But Singh also acknowledges that the documents produced include 13 records related to his SACI, which is a type of background investigation. (*See* Dkt. No. 27 at 13.) Thus, Singh does not present evidence to overcome the declarations presented by the USPS. *See Albuquerque Publ'g Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 860 (D.D.C. 1989) ("Agency affidavits enjoy a presumption of good faith that withstands purely speculative claims about the existence and discoverability of other documents."). And regardless, the question before the Court is "not whether any further documents might conceivably exist, but rather whether the government's search for responsive documents was adequate." *Weisberg*, 705 F.2d at 1351. And the Court has concluded it was.

Singh also challenges Mungin's declaration because she is "not a supervisor, and it appears that she does not have the proper knowledge to validate her Declaration." (Dkt. No. 27 at 9.) The Court disagrees. First, Mungin need not have the title of supervisor to qualify as a declarant; rather, affidavits may be made by any individual supervising the search. *See Carney v. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994). In her position as Information Disclosure Technician, Mungin analyzes and responds to FOIA and Privacy Act requests submitted to the Postal Inspection Service. (Dkt. No. 25 at 1-2.) She is "familiar with the [Postal Inspection Service]'s policies, practices, and procedures regarding the administration processing, and release of information requested under [FOIA and the Privacy Act], and the records and record systems employed by [the Postal Inspection Service] in which the information is maintained." (*Id.* at 2.) This is sufficient to qualify her as a declarant for purposes of summary judgment.

Finally, Singh complains that the USPS "only provided records in response to four of [his] requests and ignored all the other requests." (Dkt. No. 27 at 12.) This conflates the USPS's response to his request with the availability of responsive records. The USPS did in fact respond to all of his requests—by telling him that no further documents were found.

The USPS's motion for summary judgment is GRANTED as to Singh's FOIA claim.

### C. Privacy Act Claims

The Privacy Act regulates the collection, maintenance, use, and dissemination of personal information by federal agencies. *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 413 (9th Cir. 2009). There are two types of Privacy Act claims: "accuracy" claims and "access" claims. *Id.* at 413-14. Singh raises only an access claim, so the Court's analysis will be limited to that standard. The access provision requires federal agencies to provide an individual access to his or her records upon request. 5 U.S.C. § 552a(d)(1); *Rouse*, 567 F.3d at 414. However, this only includes access to records maintained in a "system of records," meaning "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). This limitation strikes a balance "between affording individuals access to those records relating directly to them and protecting federal agencies from the burdensome task of searching through agency records for mere mention of an individual's name." *Bettersworth v. F.D.I.C.*, 248 F.3d 386, 391 (5th Cir. 2001).

Again, the USPS has met its obligations to Singh. It granted him access to all documents it could locate by searching its records for his name and birth date. This was sufficient to satisfy his request for access under the Privacy Act. The USPS's motion is GRANTED as to this claim.

### III. CONCLUSION

For the foregoing reasons, the USPS's motion for summary judgment (Dkt. No. 22) is GRANTED. Singh's claims are DISMISSED with prejudice. The Clerk is directed to CLOSE this case.

1     DATED this 10th day of July, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE